Vincent Coraci, et al. * v. Commissioner. Coraci v. Commissioner
Docket Nos. 42159-42161, 42415, 44526.
United States Tax Court
T.C. Memo 1954-64; 1954 Tax Ct. Memo LEXIS 182; 13 T.C.M. (CCH) 533; T.C.M. (RIA) 54170; June 14, 1954, Filed *182 Property rights in an agreement to purchase real estate were held less than six months when disposed of by petitioners. Max M. Bernstein, Esq., for the petitioners. Donald J. Fortman, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This consolidated proceeding involves the redetermination of deficiencies in petitioners' income taxes as follows: Docket
Petitioner
No.
Year
Deficiency
Vincent Coraci
42159
1946
$5,691.50
Gloria Skolnick
42160
1946
1,722.46
Mary Coraci
42161
1946
5,714.57
Alexander Lipstock
42415
1946
1,558.82
Anna Lipstock
44526
1946
53.14
Part of the above deficiencies arise from matters not contested here, or from adjustments in petitioners' income which concededly are correct if the issues here are resolved against the petitioners. The only question involved in these proceedings is whether the gain realized by the petitioners, through their joint venture in a real estate transaction, is taxable as a short-term capital gain, as contended by respondent, or as a long-term capital gain. Most of the facts have been agreed to in a stipulation which is incorporated herein *183 by this reference. Findings of Fact The petitioner in each of these cases is an individual and each filed an individual income tax return for the calendar year 1946 with the collector of internal revenue for the first district of New York. During January, 1946, the petitioners formed a joint venture to purchase the premises identified as 95 Lorimer Street in the Borough of Brooklyn, New York. They agreed that Vincent Coraci would be the nominee and ostensible participant in the transaction and that their respective interests in the venture would be as follows: Vincent Coraci
22 1/2%
Mary Coraci
22 1/2%
Gloria Skolnick
15 %
Anna Lipstock
7 1/2%
Alexander Lipstock
7 1/2%
Mollie B. Levine
25 %
Mollie B. Levine surrendered her interest in the venture and her share was redistributed to a person who is not before the Court in these proceedings. On January 18, 1946, Vincent Coraci entered into a written agreement, on behalf of himself and the other joint venturers, with the 95 Lorimer Street Realty Corp. The agreement provided for the purchase of the premises at 95 Lorimer Street in Brooklyn according, in part, to the following terms: "THE PRICE IS *184 TWO HUNDRED THOUSAND DOLLARS ($200,000.00), payable as follows: "TEN THOUSAND DOLLARS ($10,000.00) on the signing of this contract, receipt of check for which amount is hereby acknowledged and accepted subject to collection. "ONE HUNDRED AND NINETY THOUSAND DOLLARS ($190,000.00) by good certified check on the delivery of the deed at the time hereinafter set for closing. * * *
"The seller is a corporation organized under the laws of the State of New York and operating under 'The Schackno Act'. It holds title to the aforesaid premises in pursuance of an order of the Supreme Court of the State of New York, Kings County, dated July 9, 1935. The parties hereto understand that the corporation may not sell the aforesaid real property, except with the approval of the Court, and this contract is, therefore, made subject to the approval of the Court and subject to the consent of the stockholders and debenture holds of the seller. The seller agrees to endeavor to obtain the necessary consents of the stockholders and debenture holds, and upon obtaining the appropriate consents, institute proceedings in the Supreme Court in order to obtain from the Court the approval of this proposed *185 sale. "The purchaser agrees that upon the approval of the sale by the Court, he will, upon sixty (60) days' written notice by registered mail sent to the purchaser by the seller, at the address hereinabove furnished by him, close title." The foregoing provision of agreement concerning approval of the terms by the Supreme Court was in recognition of the requirements of a New York law for the protection of guaranteed mortgage holders (the Schackno Act), Chapter 745 of the Laws of 1933, sections 4871-4881, Unconsolidated Laws of New York. Pursuant to the above agreement, on April 27, 1946, the 95 Lorimer Street Realty Corp. instituted a proceeding in the Supreme Court, County of Kings, State of New York, for approval of the terms of the agreement. The matter came before Hon. Henry L. Ughetta, Justice of the Supreme Court of the State of New York, on May 14, 1946. At the hearing in open Court, the Justice inquired whether any party would offer more for the property than the $200,000 agreed to by the petitioners. An offer of $245,000 was made by third parties and Vincent Coraci topped that with an offer of $246,000. Justice Ughetta thereupon instructed the vendor to advertise the *186 property during the succeeding two weeks and to return to him and report whether other offers were available. In accordance with these instructions, the vendor advertised the property in newspapers of general circulation in New York City and listed the property with real estate brokers. On May 27, 1946, the petitioners and the vendor returned to Justice Ughetta, reporting that no further offers had been obtained. Again, in open Court, the Justice inquired whether any offers were available and third parties offered $265,000. Vincent Coraci then agreed to match that offer and Justice Ughetta indicated that he would approve the sale to Vincent Coraci on behalf of the joint vendors for the latter figure. Vincent Coraci also agreed to deposit an additional $15,000 in earnest money. On August 6, 1946, an order was duly made and entered in the Supreme Court of the State of New York, Kings County, signed by Justice Ughetta, approving the sale of the property owned by 95 Lorimer Street Realty Corp. to Vincent Coraci for $265,000. On August 21 1946, an agreement was made between Vincent Coraci and Standard Toykraft Products, Inc., whereby Vincent Coraci agreed to sell, assign and transfer *187 to Standard all his right, title and interest in and to the contract for the purchase of the property at 95 Lorimer Street dated January 18, 1946, and all right and title to the monies paid on account of that contract, and to sell, assign and transfer to Standard all right, title and interest in and to the premises described in the contract. On August 29, 1946, representatives of the vendor, of Standard Toykraft and Vincent Coraci met together. Simultaneous deeds were executed, first transferring the property from the vendor, 95 Lorimer Street Realty Corp. to Vincent Coraci for a consideration of $265,000 and from Vincent Coraci to Standard Toykraft for a consideration of $355,000. The settlement date was September 3, 1946. The petitioners incurred expenses for commissions and fees and legal services in connection with the sale, transfer, and assignment of the contract rights abovementioned in the amount of $18,363. Thus, the total expended by the venturers for the acquisition of the property at 95 Lorimer Street was $283,363, leaving a profit to the venturers in the amount of $71,637 from the sale of the property to Standard Toykraft. The profit is taxable as a short-term *188 capital gain. Opinion ARUNDELL, Judge: The question here is whether the property sold by the petitioners to the Standard Toykraft Products, Inc., was held by petitioners for the requisite six months to qualify the profit received on its disposition as a long-term capital gain. The petitioners reckon the time of holding from the date that they signed the contract on January 18, 1946. They contend that they entered into a binding "contract to purchase" the property on this date and argue that it was this "contract" which they sold and assigned to Standard Toykraft on August 21, 1946. The respondent argues that the "contract" was merely an offer to purchase until the terms were approved by the Supreme Court of New York. From this point of view, the petitioners' contract did not become effective until the order of approval on August 6, 1946, - or certainly not before the final hearing on May 27, 1946. Reckoning from either of these dates, the sale of the contract to Standard on August 21, 1946, occurred short of the six months required for the benefits of long-term capital gains treatment. We think that the respondent is correct. The contract to purchase, dated January 18, contained *189 an express provision that it was entirely conditional on approval of the terms by the Supreme Court. One of the most important terms in any contract for the purchase of real estate is the price to be paid and it was not until the Court finally acted that this term of the contract was definitely fixed. When the Court raised the consideration named in the agreement of January 18, 1946, from $200,000 to $265,000, it certainly made a material alteration. At each step in the increase, the petitioners had to come forward to agree to the increase or suffer the property to be sold to someone else. Until the final order was made and accepted by the Court, we do not think that the petitioners had a binding contract to purchase the property. We do not have to decide what rights the contract of January 18 gave to the petitioners. It is enough to recognize that it did not give them the absolute right to purchase the property. But the absolute and unconditional right is what was agreed to be sold on August 21 to Standard. It does not matter whether the petitioners acquired the unconditional right to purchase on May 27 or August 6; we are certain that they did not acquire it on January 18. Consequently, *190 the contract to purchase was held less than six months and petitioners' profit is a short-term capital gain. It is not without significance in these cases that the contract between petitioners and Standard not only called for the assignment of the contract of January 18, 1946, and the earnest money already paid by petitioners, but petitioners in the contract also agreed to sell, assign, and transfer to Standard all right, title, and interest in and to the property itself. In fact, the mechanics of the sale was a transfer to petitioners by the 95 Lorimer Street Realty Corp. of the property and a deed to the property by petitioners to Standard. We think respondent should prevail. Decisions will be entered under Rule 50. Footnotes
*. The following proceedings are consolidated herewith: Gloria Skolnick, Docket No. 42160; Mary Coraci, Docket No. 42161; Alexander J. Lipstock, Docket No. 42415; and Anna Lipstock, Docket No. 44526.↩